## IN THE COURT OF COMMON PLEAS FOR DAUPHIN COUNTY, PENNSYLVANIA

PLAINTIFF:
AEGIS SECURITY INSURANCE COMPANY

v.

DEFENDANTS:
RAKS FIRE SPRINKLER, LLC
ROMERO ALI
ALIA ALI
RASHAD ALI
DONNA A. ALI

:    CIVIL ACTION

:    DOCKET NO.:

:    2021 CV 318 NT

TO:    RAKS FIRE SPRINKLER, LLC
       ROMERO ALI
       ALIA ALI
       RASHAD ALI
       DONNA A. ALI

### NOTICE OF JUDGMENT
### PURSUANT TO PENNSYLVANIA RULES OF CIVIL PROCEDURE 236

YOU ARE HEREBY NOTIFIED THAT ON ____JAN 1 3 2021____, 2021, A JUDGMENT BY CONFESSION HAS BEEN ENTERED AGAINST YOU IN THE ABOVE-CAPTIONED CASE IN THE SUM OF **$912,441.73.** ENCLOSED HEREWITH IS A COPY OF ALL THE (RECORD) DOCUMENTS FILED IN SUPPORT OF THE JUDGMENT.

DATE: _____JAN 1 3 2021_____      _Matthew R. Krupp_
                               PROTHONOTARY

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
Address: 213 North Front Street, Harrisburg, PA 17101  Phone: (717) 232-7536

1

I hereby certify that the following is the address of the Defendants stated in the certificate of residence:

RAKS Fire Sprinkler, LLC
215 Mobile Street
Hattiesburg, MS 39401

Romero Ali
302 First Hopewell Road
Sumrall, MS 39482

Alia Ali
4424 Shamrock Lane
Montgomery, AL 36106

Donna A. Ali
302 First Hopewell Road
Sumrall, MS 39482

Romero Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Alia Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Rashad Ali
302 First Hopewell Road
Sumrall, MS 39482

Michael F.J. Romano, Esquire
Attorney for Plaintiff
Phone:  (856) 384-1515

## AVISO IMPORTANTE

TO:   RAKS FIRE SPRINKLER, LLC
        ROMERO ALI
        ALIA ALI
        RASHAD ALI
        DONNA A. ALI

Por este medio sea avisado que en el dia _____ JAN 1 3 2021 _____ de _____ de, 2021, un fallo por admission fue registrado contra usted por la contidad de **$912,441.73** del caso ante escrito.

Fecha:  El dia _ de JAN 1 3 2021 _____, de 2021        Matthew R. Krupp
                                                          Protonotario

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIAMENTE.  SI NO TIENE UN ABOGADO, O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEPFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
Address: 213 North Front Street, Harrisburg, PA 17101  Phone: (717) 232-7536

2

Por este medio certifico que lo siguiente es la direccion del demand dicho en el certificado de residencia:

RAKS Fire Sprinkler, LLC
215 Mobile Street
Hattiesburg, MS 39401

Romero Ali
302 First Hopewell Road
Sumrall, MS 39482

Alia Ali
4424 Shamrock Lane
Montgomery, AL 36106

Donna A. Ali
302 First Hopewell Road
Sumrall, MS 39482

Romero Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Alia Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Rashad Ali
302 First Hopewell Road
Sumrall, MS 39482

Michael F.J. Romano, Esquire
Attorney for Plaintiff
Phone:  (856) 384-1515

3

**IN THE COURT OF COMMON PLEAS FOR DAUPHIN COUNTY, PENNSYLVANIA**

PLAINTIFF:
AEGIS SECURITY INSURANCE COMPANY

    v.

DEFENDANTS:
RAKS FIRE SPRINKLER, LLC
ROMERO ALI
ALIA ALI
RASHAD ALI
DONNA A. ALI

    CIVIL ACTION

    DOCKET NO.:
    2021 cv 318 NT

    2021 JAN 13 PM 12:39
    RECEIVED OFFICE OF PROTHONOTARY

TO:   RAKS FIRE SPRINKLER, LLC
      ROMERO ALI
      ALIA ALI
      RASHAD ALI
      DONNA A. ALI

### PRAECIPE FOR ASSESSMENT OF DAMAGES PURSUANT TO WARRANT OF ATTORNEY FOR CONFESSION OF JUDGMENT FOR MONEY

TO THE PROTHONOTARY:

      Pursuant to the authority contained in the Warrant of Attorney, as described in the Agreement of Indemnity dated September 16, 2016, a true and correct copy of which is attached as Exhibit 1 to the Complaint for Confession of Judgment filed concurrently herewith in this action, I have appeared for the above-captioned Defendants and confessed judgment in favor of Plaintiff, Aegis Security Insurance Company and against Defendants, RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, and by this Praecipe, Plaintiff requests that your office assess damages for such confessed judgment as follows:

| | |
|---|---|
| Principal Amount of Claims: | $810,096.90 |
| Expert /Investigation Fees: | $ 43,630.29 |
| Attorney's Fees: | $ 62,455.54 |
| Less Subrogation Payments Received | ($ 3,741.00) |
| Total Judgment Amount: | $912,441.73 |
| | Plus interest from date of judgment |

Michael F.J. Romano, Esquire
Attorney for Plaintiff

4

**IN THE COURT OF COMMON PLEAS FOR DAUPHIN COUNTY, PENNSYLVANIA**

PLAINTIFF:
AEGIS SECURITY INSURANCE COMPANY

v.

DEFENDANTS:
RAKS FIRE SPRINKLER, LLC
ROMERO ALI
ALIA ALI
RASHAD ALI
DONNA A. ALI

:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

DOCKET NO.:
2021 CV 318 NT

2021 JAN 13 PM 12: 39
RECEIVED
OFFICE OF
PROTHO...
DAUPHIN COUNT...

TO:   RAKS FIRE SPRINKLER, LLC
ROMERO ALI
ALIA ALI
RASHAD ALI
DONNA A. ALI

## CONFESSION OF JUDGMENT PURSUANT TO PA. R.C.P. 2955

TO THE PROTHONOTARY:

Pursuant to the authority contained in the Warrant of Attorney, as set forth in the Agreement of Indemnity dated September 16, 2016, a true and correct copy of which is attached as Exhibit 1 to the Complaint for Confession of Judgment filed concurrently herewith in this action, I appear for the above-captioned Defendants, and request that your office enter judgment by confession in favor of Plaintiff, Aegis Security Insurance Company against Defendants, RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali as follows:

| | |
|---|---|
| Principal Amount of Claims: | $810,096.90 |
| Expert /Investigation Fees: | $ 43,630.29 |
| Attorney's Fees: | $ 62,455.54 |
| Less Subrogation Payments Received | ($ 3,741.00) |
| Total Judgment Amount: | $912,441.73 |
| | Plus interest from date of judgment |

Michael F.J. Romano, Esquire
Attorney for Plaintiff

1

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><div align="right">Plaintiff,</div><br>v.<br><br>RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><div align="right">Defendants.</div> | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.:  2021 cv 318 NT |

## COMPLAINT FOR CONFESSION OF JUDGMENT

AND NOW comes AEGIS SECURITY INSURANCE COMPANY, through its

undersigned counsel, and pursuant to Pa.R.C.P. 2951(a) files this action to confess judgment

1

upon Defendants, RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, jointly and severally, and in support thereof avers that:

1.     Plaintiff, Aegis Security Insurance Company ("Aegis" or "Plaintiff" or "Surety"), is a corporation incorporated under the laws of the Commonwealth of Pennsylvania that maintains its principal place of business in Dauphin County, Commonwealth of Pennsylvania at 4507 North Front Street, Suite 200, Harrisburg, Pennsylvania.

2.     Defendant, RAKS Fire Sprinkler, LLC ("RAKS") is a corporation conducting business at the above-captioned address.

3.     Defendant, Romero Ali, is an adult individual believed to be conducting business and/or residing at the above-captioned address.

4.     Defendant, Alia Ali, is an adult individual believed to be conducting business and/or residing at the above-captioned address.

5.     Defendant, Rashad Ali, is an adult individual believed to be conducting business and/or residing at the above-captioned address.

6.     Defendant, Donna A. Ali, is an adult individual believed to be conducting business and/or residing at the above-captioned address.

7.     Said defendants have at all times relevant herein conducted business with Surety.

8.     Defendants, RAKS is the "Principal," and Defendants, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali are the "Indemnitors" under that certain Agreement of Indemnity dated September 16, 2016 (the "AOI").   A true copy of the original AOI, including sealed signatures of executing Defendants, is annexed hereto as Exhibit 1 of this Complaint for Confession of Judgment and the terms of same are incorporated herein by this reference.

2

9.    Pursuant to the AOI, Aegis furnished the Principal the following Labor and Material Payment and Performance Bond, No.: BDS 001 179 to Obligee, Goudy Construction, Inc., dated September 1, 2017, pursuant to a contract between Obligee and RAKS, for the work performed on the Maxwell Air Force Base, Contract No.: FA330017C0020 ("AFB Project"), each with a penal sum of $787,414.00 (the "Bonds").  A true copy of the Bonds are annexed hereto and incorporated herein as Exhibit "2", of this Complaint for Confession of Judgment.

10.    Aegis has received and paid the following claims on the Bonds to date:

(a)    Aegis received and paid payment bond claim from Brendle Fire Equipment, Inc. against Bond No.: BDS 001 179 on the AFB Project in the amount of $20,702.90 and

(b)    Aegis received and paid payment bond claim from Williamson Industries, Inc. against Bond No.: BDS 001 179 on the AFB Project in the amount of $1,980.00; and

(c)    Aegis has received a performance bond claim from Owner/Obligee, Goudy Construction, Inc., in the amount of $787,414.00 under Bond No.: BDS 001 179; and

(d)    Aegis has collected $3,741.00 to date.

11.    The total of the claims paid by Aegis on behalf of Principal, RAKS, minus the $3,741.00 collected to date is $18,941.90, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29.

12.    Further, Aegis has been exposed to a performance bond claim in the amount of $787,414.00.  Aegis disputes and reserves all rights and defenses to such performance bond claim and is currently defending an action brought under that performance bond.

13.    Further, Aegis anticipates it may receive additional bond claims from various owners, subcontractors, and/or suppliers and/or will incur additional attorneys' fees, investigative costs and other costs and expenses recoverable under the AOI.

3

14.    Paragraph 3(a) of the AOI provides Aegis the right to indemnity against the defendants herein. Specifically, that provision provides:

> The Principal and Indemnitors shall exonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, …(i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of the Principal or any one or more of the Indemnitors to perform or comply with any of the covenants or conditions of this Agreement; (iii) in enforcing any of the covenants or conditions of this Agreement; (iv) in making an investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether the Surety, at its sole option, elects to employ its own counsel or permits or requires the Principal to make arrangements for the Surety's legal representation.

15.    Paragraph 3b of the AOI provides that Aegis is entitled to demand and receive collateral. Paragraph 3b of the AOI is entitled "<u>Right to Deposit of Collateral.</u>" The paragraph states in relevant part:

> (b)    The Principal and Indemnitors shall make payment to the Surety immediately upon demand by the Surety. The Surety may demand payment in an amount: (i) equal to the amount of any reserve set by the Surety, or (ii) equal to such amount as the Surety, in its sole judgment, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors are obligated to indemnify the Surety under the terms of this Agreement.

16.    Under the AOI, Aegis is entitled to be indemnified by the Defendants from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including but not limited to interest, court costs, counsel fees, and/or investigative costs). Exhibit 1, paragraph 3.

4

17.     In addition, Aegis has the unqualified right to demand and receive collateral from Defendants equal to the amount of any reserve set by the Surety, or equal to such amount as the Surety, in its sole judgment, shall deem sufficient to protect it from loss.

18.     Defendants are in default under the terms of Paragraph 1(c) of the AOI which defines in relevant part an "Event of Default" by (a) being declared in default by an obligee on any Bond;  (b) failing to pay claims, bills, bond premiums, or other indebtedness incurred in, or in connection with the performance of any Contract, to the extent due, in whole or in part; (c) failing to perform or comply with, any of the terms, covenants or obligations set forth in this Agreement, including, but not limited to any allegations set forth hereinabove or below.

19.     Defendants have breached the AOI by defaulting pursuant to its terms and provisions including but not limited to paragraph 1(c)(i through v), paragraph 3, paragraph 7, paragraph 10 and paragraph 20, and as a result, Defendants have caused Aegis to incur or exposed Aegis to aggregate claims, losses, expenses, or damages, to date, in the net amount of $912,441.73, which includes claims paid and the performance bond exposure in the amount of $810,096.90, less the subrogation payments received to date of $3,741.00, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29.

20.     Although Aegis reserves all rights and defenses to any claim brought against it, Aegis has demanded that the Defendants provide adequate security or collateral to Aegis to mitigate or fully reimburse Aegis for potential losses as well as claims paid and anticipated in the amount of $912,441.73.  A true copy of the demand sent and emailed to the Defendants is attached hereto and incorporated herein as Exhibit "3".   Despite demand, the balance due to Aegis by Defendants has not been paid.

5

21.     Paragraph 26 of the AOI, among other provisions, expressly empowers any attorney of record or Prothonotary or clerk of court in any jurisdiction to appear for the Defendants, to confess or enter judgment against Defendants in favor of Surety for all such sums payable under the AOI as evidenced by Affidavit and authorized representative of Surety setting forth such amount due, plus reasonable attorney's fees, costs of suit and interest.  Further, paragraph 21 of the AOI provides for jurisdiction and venue in Dauphin County, Commonwealth of Pennsylvania.

22.     The attached Affidavit of Kimberly R. Moore, the duly authorized representative of Aegis, also quantifies and describes the losses, claims, expenses and damages for which Aegis, through its attorney of record, confesses judgment against Defendants, and is filed concurrently herewith and incorporated herein.

23.     Paragraph 26 of the AOI further states:

> THE UNDERSIGNED JOINTLY AND SEVERALLY WAIVE
> THE RIGHT TO ANY STAY OF EXECUTION AND THE
> BENEFIT OF ANY AND ALL EXEMPTIONS TO WHICH
> THEY MAY NOW OR MAY HEREAFTER BE ENTITLED
> UNDER LAW.  NO SINGLE EXERCISE OF THE FOREGOING
> WARRANT AND POWER TO BRING AN ACTION OR
> CONFESS JUDGMENT SHALL BE DEEMED TO EXHAUST
> THE POWER BUT THE POWER SHALL CONTINUE
> UNDIMINISHED AND MAY BE EXERCISED FROM TIME
> TO TIME AS OFTEN AS SURETY SHALL ELECT, WHETHER
> BEFORE OR AFTER DEMAND IS MADE, UNTIL ALL SUMS
> PAYABLE TO SURETY UNDER THIS AGREEMENT HAVE
> BEEN PAID IN FULL.

24.     Aegis seeks entry of judgment in the amount of $912,441.73 (which includes claims paid and the performance bond exposure in the amount of $810,096.90, less the subrogation payments received to date of $3,741.00, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29).

25.     Judgment is not being entered by confession against any person, including Defendants, in connection with a consumer credit transaction.

26.     Defendants are not members of any military service of the United States of America or any of its allies.

27.     No assignment of the AOI has occurred.

28.     Judgment has not been entered on the AOI in any other jurisdiction.

29.     Aegis reserves the right to further exercise the warrant under paragraph 26 of the AOI to confess judgment against Defendants in the event of future payments, losses, claims, expenses and fees.

WHEREFORE, Plaintiff, Aegis Security Insurance Company prays the Honorable Court confess judgment and enter said judgment in favor of Plaintiff, Aegis Security Insurance Company, and against Defendants, RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, individually, jointly and severally, in the amount of $912,441.73 (which includes claims paid and the performance bond exposure in the amount of $810,096.90, less the subrogation payments received to date of $3,741.00, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29) plus continuing attorney's fees, investigative costs, expert costs, expenses and interest at six percent (6%) per annum from the date of default until paid.

Respectfully submitted:

Michael F.J. Romano, Esquire
Attorney for Plaintiff

7

## VERIFICATION

I, Kimberly R. Moore, Senior Surety Consultant, for On Point Risk Solutions, Inc., and authorized representative for Aegis Security Insurance Company, Plaintiff, hereby certify that the facts set forth in the attached Complaint for Confession of Judgment against Defendants, RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, are true and correct to the best of my personal knowledge, information and/or belief.

I make this verification subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

Kimberly R. Moore, Senior Surety Consultant,
On Point Risk Solutions, Inc., as authorized
Aegis Security Insurance Company Representative

AEGIS SECURITY INSURANCE COMPANY

v.

RAKS FIRE SPRINKLER, LLC, ROMERO ALI, ALIA ALI,
RASHAD ALI AND DONNA A. ALI

## PLAINTIFF'S EXHIBIT 1

# AGREEMENT OF INDEMNITY

**THIS IS AN IMPORTANT DOCUMENT WHICH AFFECTS YOUR RESPONSIBILITIES AND OBLIGATIONS TO AEGIS SECURITY INSURANCE COMPANY WITH REGARD TO THE BOND FOR WHICH YOU HAVE APPLIED AND ANY FUTURE BONDS WHICH MAY BE ISSUED TO YOU OR ON YOUR BEHALF.  READ THIS DOCUMENT CAREFULLY, AND IF YOU HAVE ANY QUESTIONS OR DO NOT UNDERSTAND IT FULLY, CONSULT WITH YOUR ATTORNEY.**

THIS Agreement of Indemnity (hereinafter referred to as the "Agreement"), made and entered into this __16__ day of ~~August~~ _Serent_ 2016, by **RAKS Fire Sprinkler, LLC, 215 Mobile Street, Hattiesburg, MS 39401** (Insert full name and address of Contractor), (hereinafter referred to as the "Principal") and **Romero Ali & Alia Ali, 10007 NE 12th Street, Apt #108, Bellevue, WA 98004; Rashad Ali & Donna A. Ali, 302 First Hopewell Rd, Sumrall, MS 39482** (Insert full names and addresses of Indemnitors, if any), (hereinafter referred to as "the Indemnitors") and **AEGIS SECURITY INSURANCE COMPANY**, Harrisburg, Pennsylvania (hereinafter referred to as the "Surety").

The Principal, in its own name or as co-venturer with others, or the Indemnitors (or any of them) may desire or be required to give or procure Bonds now or in the future, or may desire to cause the Surety to refrain from canceling such Bonds. The Principal and Indemnitors understand that the Surety expressly requires the execution and delivery of this Agreement as part of the consideration for either issuing or from refraining from canceling such Bonds, either now or in the future.  The Principal and the Indemnitors have substantial, material or beneficial interest in obtaining, renewing, continuing or substituting such Bonds. The Surety has relied upon and will continue to rely upon the representations of the Principal and the Indemnitors as to their character, identity, control, beneficial ownership, financial condition and existence in executing, renewing, continuing or substituting such Bonds.  All financial information documents and schedules provided to the Surety by Indemnitors or the Principal are incorporated herein by reference thereto.

In consideration of the foregoing, the promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is expressly acknowledged by the undersigned, the Principal and the Indemnitors for themselves, their heirs, executors, administrators, successors, subsidiaries, parents and assigns, present or future, jointly and severally, whether alone or in joint venture with others not named herein, hereby covenant and agree with the Surety as follows:

1.  <u>Definitions</u>.  As used in this Agreement, the following terms shall have the following respective meanings:

(a)  "Bond" or "Bonds" means any undertaking, contract of suretyship, guaranty or indemnity, an agreement or consent to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement or consent, whether with the same or different penalties or conditions executed or procured by the Surety on behalf of the Principal.

(b)  "Contract" means an agreement between the Principal and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings that are a part of the contract) that may be the subject matter of one or more Bonds executed on behalf of Principal and by Surety.

(c)  "Event of Default" means any one or more of the following: (i) any declaration of default by an obligee on any Bond; (ii) any abandonment, forfeiture or breach of, or failure, refusal or inability to perform any Contract or obligation which is the subject of any Bond, whether actual or alleged; (iii) any failure, delay, refusal or inability of the Principal to pay claims, bills, Bond premiums, or other indebtedness incurred in, or in connection with the performance of any Contract, to the extent due, in whole or in part; (iv) any failure to perform or comply with, any of the terms, covenants or obligations set forth in this Agreement, including, but not limited to, any Additional Covenants set forth and annexed hereto; (v) any failure to pay or discharge, when due, an indebtedness of any Indemnitor to the Surety, including, but not limited to the payment of Bond premiums and fees, payments in exoneration attorney's fees and the cost of enforcing this Agreement; (vi) any assignment by the Principal for the benefit of creditors or any appointment or application by the Principal of a receiver or trustee for the Principal or its property, whether insolvent or not, or any application by the Principal for reorganization, dissolution or arrangement under the bankruptcy laws of the United States or any state, possession or territory thereof, or initiation of any such proceeding relating to the Principal by a third party; (vii) if the Principal is an individual, the Principals' death, disappearance, or incompetency, or, if the Principal is any other type of entity, any change or threat of change in control or existence; (viii) any sale of the Principal's assets or diminution thereof which impairs the Principal's ability to conduct business; (ix) any proceeding or the exercise of rights which deprives or impairs the Principal's ability to use its plant, machinery, equipment, plans, drawings, tools, supplies, manpower, workforce or materials; (x) any other material change in the Principal's business operation or financial condition or the happening of any event other than those specified above which, in the Surety's sole opinion, may expose the Surety to loss, cost or expense.

B-2 Revised (11/09)

Initial _R A__ __H H__ _(A) (DR)_



1

(d)   "Principal" means the individuals, firms or corporations identified on Page 1 of this Agreement, as well as any of their present or future subsidiaries, affiliates, parents or successors in interest, whether alone or in joint venture with others not named herein, including any such entity for which the Surety executes Bonds.

(e)   "Surety" means Aegis Security Insurance Company and its successors, assigns, affiliates, associates and subsidiaries.

(f)   "Indemnitor" or "Indemnitors" means the Principal and each person or entity signing or identified within this Agreement as an Indemnitor.

2.   Premium.  The Principal and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Principal or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

3.   Indemnification and Hold Harmless.

(a)   The Principal and Indemnitors shall exonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including but not limited to interest, court costs, counsel fees, and/or investigative costs), and from and against any and all other such losses and expenses which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of the Principal or any one or more of the Indemnitors to perform or comply with any of the covenants, terms or conditions of this Agreement; (iii) in enforcing any of the covenants or conditions of this Agreement; (iv) in making an investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover losses, expenses, or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether the Surety, at its sole option, elects to employ its own counsel or permits or requires the Principal to make arrangements for the Surety's legal representation.

(b)   Right to Deposit of Collateral - The Principal and Indemnitors shall make payment to the Surety immediately upon demand by the Surety.  The Surety may demand payment in an amount: (i) equal to the amount of any reserve set by the Surety, or (ii) equal to such amount as the Surety, in its sole judgment, shall deem sufficient to protect it from loss.  The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors are obligated to indemnify the Surety under the terms of this Agreement.  The Surety's rights under this Agreement shall not be limited to the amount of any demand, reserve, deposit, or collateral from any Principal, Indemnitor or others.  The Surety shall have no obligation to invest, or to provide a return on, the deposit.  The Principal and Indemnitors shall be entitled to the refund of any unused portion of the deposit upon termination of the liability of the Surety on all Bonds and the performance by the Principal and Indemnitors of all obligations to the Surety under the terms of this Agreement.  The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Principal and Indemnitors at the addresses stated herein, or at the addresses of the Principal and Indemnitors last known to the Surety, regardless of whether actually received.  The Principal and Indemnitors acknowledge that the failure of the Principal and Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as collateral security shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law.  The Principal and Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of the obligation of Principal and Indemnitors to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary.

(c)   In the event of any payment by the Surety, the Principal and Indemnitors further agree that in any accounting between the Surety and the Principal and Indemnitors, or any one or more of them, the Surety shall be entitled to reimbursement for any and all payments, disbursements and advances made by it in good faith and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and that the any vouchers, affidavits or other evidence of any such payments made by the Surety shall be prima facie evidence of the propriety and fact of any payment and amount of the liability therefore to the Surety.  In addition to the payments to be made to the Surety as set forth above, the Principal and Indemnitors agree to pay to the Surety expenses (including, but not limited to, court costs and counsel fees) and interest on all disbursements made by Surety as a consequence of the execution of one or more Bonds, at the rate of two percent above the then prime rate of interest (as published in the Wall Street Journal or other reputable source) as calculated from either the date of issuance by the Surety of the Bond, or from the date of each disbursement by the Surety, at the sole discretion of the Surety.

4.   Assignment.

(a)   The Principal and Indemnitors, to the extent of their interests therein, hereby assign, pledge, transfer and convey to the Surety as collateral security to secure any and all obligations or liabilities of the Principal and Indemnitors to the Surety whenever or however incurred: (i) all of the rights of the Principal in, and arising in any manner out of, any Contract, including, but not limited to, any monies

B-2 Revised (11/09)                                                                                 Initial _____ _____ _____ _____

2

due therefrom; (ii) all of the right, title and interest of the Principal and/or Indemnitors in and to all machinery, equipment, plant, tools, inventory and materials which are now, or may hereafter be, utilized in connection with any Contract, regardless of whether they are located at a construction site, in storage elsewhere or in transit anywhere; (iii) all right, title and interest of the Principal in and to all subcontracts and purchase orders let or to be let in connection with any Contract and in and to all surety bonds, guarantees or other undertakings supporting such subcontracts or purchase orders; (iv) all right, title and interest of the Principal in and to any actions, causes of action, claims or demands whatsoever which the Principal may have or acquire against any party to the Contract or in connection with the Contract, including, but not limited to, those against obligees or bonds, design professionals, prime contractors, subcontractors, laborers or materialmen or any person furnishing or supplying labor, materials, supplies, machinery, tools, inventory or other equipment in connection with or on account of any Contract and against a surety of any obligee, subcontractor, laborer or materialmen; (v) all monies due or to become due to the Principal on any policy of insurance relating to any claims arising out of the performance of any Contract, including, but not limited to, claims under builders risk, fire, employee dishonesty or workers compensation insurance policies, including premium refunds; (vi) any Additional Collateral more particularly described on any Schedule annexed hereto and incorporated herein by reference; and (vii) all other real or personal property now owned or hereafter acquired by each of the Indemnitors, including accounts receivable, notes receivable, chooses in action and proceeds of collateral. All financial information documents and schedules provided to the Surety by Indemnitors or the Principal are incorporated herein by reference thereto.

(b)     The aforementioned assignment, transfer and conveyance shall become effective as of the effective date of each Bond executed by the Surety. The Surety may exercise its rights under this Paragraph 4 upon the occurrence of an Event of Default under this Agreement.

(c)     From time to time as circumstances so require, the Surety reserves the right in its sole discretion to require collateral in addition to any described on any Schedule annexed hereto and incorporated herein by reference. The amount thereof shall be designated by the Surety, in its sole discretion. The Principal and Indemnitors shall be obligated to provide such additional security immediately upon demand by Surety. The Surety has the sole discretion to determine whether collateral already in its possession is adequate.

5.     Changes; Waiver of Notice and Defenses. The Surety, at its sole option and discretion, is authorized, without notice to or knowledge of the Principal or Indemnitors, notice being hereby expressly waived: (a) to agree or refuse to agree to any change whatsoever in any Bond or Contract, including, but not limited to, any change in the time for completion of a Contract, the scope of a Contract and to payments or advances thereunder before they become due; (b) to consent to or refuse to consent to any assignment or assignments of any Bonds; and (c) to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to execute any substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties or to refuse to execute or consent to the executions of such continuations, extensions, renewals or substitutions. It is expressly understood and agreed that the Principal and Indemnitors shall remain bound under the terms of this Agreement even though any such consent or refusal by the Surety does or might substantially increase the Principal's and Indemnitors' liability to the Surety or others; and that the Principal and Indemnitors shall be liable to Surety pursuant to this Agreement on account of any such changed, altered, modified, amended, limited, renewed, substituted or extended Bond or Bonds. The Principal and Indemnitors hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Principal or Indemnitors.

6.     Advances. The Surety, at its sole option and with sole discretion, may guaranty loans, advance or lend to, or for the account of, the Principal any money which the Surety believes to be in its best interest. It may with sole discretion, not guaranty loans, refuse to advance money and/or at any time, cancel such guaranty or loans with or without notice to the Principal. All money expended by the Surety, or loaned or advanced by the Surety under this paragraph and all related costs and expenses, shall constitute indemnity obligations for the Principal and Indemnitors under Paragraph 3 of this Agreement and shall be presumed to be a loss to the Surety.

7.     Prosecution of Claims; Settlement. The Surety shall have the full and exclusive right, in its name or in the name of the Principal, but not the obligation, to prosecute, compromise, release or otherwise resolve any of the claims, causes of action or other rights assigned to the Surety in Paragraph 4 above, upon which terms as the Surety, in its sole discretion, shall deem appropriate. The Surety shall have the exclusive right in its name or in the name of the Principal to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any Bond or to take whatever other action it may deem necessary, expedient or appropriate. Any amounts paid by the Surety in good faith under the belief that (1) the Surety was or might be liable therefore, and (2) such payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen the Surety's liability or alleged liability are within the sole discretion of the Surety as to whether to adjust, settle or compromise. The Surety's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled or defended shall be final, binding and conclusive upon the Principal and Indemnitors. In the event that the Principal and/or the Indemnitors request the Surety to litigate any claim or demand, or to defend a suit or to appeal from a judgment, and in the event that the Surety agrees to do so, which decision shall rest in the sole discretion of the Surety, the Surety shall have the right to demand and receive from the Principal and the Indemnitors prior to commencing the defense or appeal, such cash or collateral security satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or that might be rendered, with interest, costs, expenses and attorney's fees, including those of the Surety. In the event that the Surety decides to litigate any claim, the Principal and Indemnitors shall fully cooperate with the Surety in the defense or prosecution thereof.

B-2 Revised (11/09)                                                    Initial RA MA CW WE

3

8.    Trust Funds. The Principal and Indemnitors acknowledge and agree that all payments received for or on account of any Contract shall be held in trust as a trust fund for the payment of obligations incurred or to be incurred in the performance of any Contract and for labor, materials and services furnished in the prosecution of the work required in any Contract or any extension or modification thereof. It is expressly understood and declared that all monies due and to become due under any Contract are also trust funds, whether in the possession of the Principal or Indemnitors or otherwise.  The trust funds shall be for the benefit and payment of all obligations for which the Surety may be liable as a consequence of execution of any Bond.  The trust shall inure to the benefit of the Surety for any liability or loss it may have or sustain as a consequence or execution of any Bonds, and this Agreement and declaration constitute notice of such trust.  This provision as well as all provisions of this Agreement shall not be construed to create liability of the Surety to any third parties claiming to be beneficiaries, as set forth in paragraph 30 below.

9.    Security Interest.  This Agreement shall constitute a Security Agreement for the benefit of the Surety as a secured party and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code or similar statute and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law or in equity. The Surety may make such additions to this Agreement, including the attachment of schedules more specifically describing the collateral as may be necessary to permit its filing as a financial statement under the Uniform Commercial Code, and the Principal and Indemnitors agree to execute and deliver such further instruments as may be necessary to perfect and protect the Surety's interest.  A copy of this Agreement shall be sufficient for filing as a financing statement.

10.   Covenants.  The Principal and each of the Indemnitors agrees that, until the liability of the Surety as a consequence of execution of all Bonds is terminated and the Surety is fully reimbursed and indemnified for all amounts due to it under this Agreement and by operation of law, the Principal and each of the Indemnitors:  (a) will promptly pay to the Surety all premiums and charges of the Surety for the Bonds, including, but not limited to, any additional premium resulting from any increase in payments to the Principal under any Contract; (b) will furnish the Surety with such information as it may request from time to time concerning the Principal and each of the Indemnitors' financial condition or the status of work under any contracts and the payment of obligations incurred in connection therewith; (c) hereby authorize and request any banks, depositories, obligees of Bonds, materialmen, suppliers or others who have the information concerning the affairs and operations of the Principal and /or Indemnitors to provide such information to the Surety; (d) will comply with any covenants set forth on any schedules annexed hereto and incorporated herein by reference.  In the event of any bankruptcy proceedings by the Principal or one or more of the Indemnitors, and to the extent permitted by law, the Principal and the Indemnitors agree and covenant to waive any rights to enforcement by the Surety of any applicable statutory automatic stay provision.

11.   Books and Records.  At any time, and until such time as the actual or potential liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to, and the Principal and Indemnitors shall furnish, reasonable access to the books, records, and accounts of the Principal and Indemnitors, and the Surety shall have the right to examine and copy said books, records and accounts; and any bank, depository, accountant, creditor, obligee or any Bonds, subcontractor, supplier, materialmen, or other person, firm or corporation when requested by the Surety is hereby authorized to furnish the Surety any information including, but not limited to, the status of the work under contracts being performed by the Principal, the condition of the performance of such contracts, and payment of accounts.

12.   Homestead.  The Principal and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

13.   RIGHTS UPON DEFAULT.  Upon the occurrence of any Event of Default, or any breach or delay asserted by the Obligee with respect to any Contract or Bond, and in addition to any other rights it may possess under this agreement or as a matter of law the Surety shall have the right, at its option and in its sole discretion, and is herby authorized, but not required with or without exercising any other right or option conferred upon it by law or by the terms of this Agreement, to:  (a) take possession of any part of all of the work under any Contracts and at the expense of the Principal and the Indemnitors, to complete or arrange for completion of the same;  (b) take possession of supplies, tools, plant, equipment, inventory and materials and to use, and consume if necessary, the same in the performance of any Contract;  (c) exercise its rights regarding collateral described in Paragraph 3 or 4 of this Agreement; (d) draw down on letters of credit or liquidate or foreclose on any other additional collateral described on any schedule annexed hereto; (e) execute in the name of the Principal any instruments deemed necessary or desirable to effectuate the foregoing.  Election of one or more of the foregoing remedies shall not be deemed a waiver of any other right or remedy of Surety.

14.   Suits.  Separate suits may be brought hereunder as causes of action accrue and the bringing pendency or termination of such suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

B-2 Revised (11/09)

Initial _RA_ _ABt_ _____ _(DA_

4

15.   Power of Attorney. The Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety, or any person or persons designated by the Surety, as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to the Surety by this Agreement and in their name or names  to execute and deliver any and all assignments, instruments or documents required or desired by the Surety to: (a) vest in the Surety absolute title to any and all monies, property and rights herby assigned; and (b) provide the protection and rights to the Surety contemplated by all of the provisions of this Agreement. The Principal and the Indemnitors hereby ratify and confirm all acts and actions taken and done by and on behalf of the Surety as such attorney-in-fact.

16.   Decline Execution. The Principal and Indemnitors are not obligated to request the Surety to execute, provide or procure any Bond required by them in the conduct of their business.  Furthermore, the Surety, at its option and in its sole discretion, has the right to decline to execute or issue any Bond applied for without incurring any liability whatsoever.  If the Surety does execute a bid or proposal Bond, or agrees or consents to provide such contract of suretyship, the Surety has the right to decline to execute any final Bond, including but not limited to any performance, payment or maintenance Bond, that may be required in connection with any award that may be made on the bid Bond, proposal or tender to which the bid Bond, proposal Bond or agreement or consent to provide such contract of suretyship, is given.

17.   Severability and Waiver. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction or enforcement, it shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted. Any election or failure by the Surety to enforce any provision of this Agreement shall not be construed as a waiver of any of the terms of this Agreement.

18.   Partial Execution and Failure of Execution.  In case any of the parties named as Principal and/or Indemnitor in this Agreement fails to execute the same, or in case the execution hereof by any of the parties shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the other parties executing the Agreement, but each and every party so executing shall be and remain fully bound and liable hereunder the same extent as if such failure, defect or invalidity had not existed. The obligations of the Principal and Indemnitors hereunder shall not be affected by the failure of the Principal to execute any Bond.

19.   Other Sureties.  If the Surety procures the execution of any Bond by other sureties or executes the Bonds with co-sureties or reinsures any portion of said Bonds with reinsuring sureties, then all of the terms and conditions of this Agreement shall inure to the benefit of such sureties, co-sureties and reinsuring sureties, as their interest may appear.

20.   Termination. This Agreement is a continuing agreement which shall remain in full force and effect unless terminated.  This Agreement may be terminated by the Principal or an Indemnitor only upon thirty (30) days written notice to the Surety by Registered or Certified Mail addressed to the Surety at the Surety's address identified in Paragraph 22 of this Agreement.  Any notice of termination shall not operate to modify, bar, discharge, limit effect or impair the obligations of the Principal and Indemnitors under this Agreement with respect to: (a) Bonds executed prior to the effective date of such termination notice; and/or (b) Bonds executed after such date: (i) upon the award of a Contract to the Principal on a bid or proposal for which the Surety has executed a bid or proposal Bond or similar undertaking prior to such date; or (ii) any Bonds, whether or whenever executed, for which the Surety may have otherwise become obligated prior to such date to execute or for which the Surety may have incurred potential liability.  Any notice of termination shall become effective only as to the Principal or those Indemnitors who have given notice of termination.

21.   Jurisdiction. This Agreement shall be subject to and construed under the laws of the Commonwealth of Pennsylvania and jurisdiction and venue shall be Dauphin County, Pennsylvania.

22.   Notices.

(a)   The Principal and Indemnitors shall promptly provide written notice (first class mail, return receipt requested) to the Surety at its office located at 2407 Park Drive, Harrisburg, Pennsylvania, 17110 of any of the following events:  (i) notice by any obligee on any Bond to the Principal that the Principal is in default or has failed or refused to perform any Contract obligation; (ii) notice by any obligee on any Bond to the Principal that the Principal cure its performance or show cause as to why the Principal should not be terminated for default; (iii) the occurrence of a payment dispute or the assertion of any claim, demand, suit, arbitration proceeding, judgment, notice or other action or proceeding which may result in liability to the Surety under any Bond; (iv) the occurrence of any material change in the Principal's financial condition; and (v) the occurrence of any Event of Default.

(b)   The Principal and Indemnitors agree among themselves and acknowledge to the Surety that notification by the Surety to the Principal or to any one Indemnitor shall constitute notice to the Principal and to all Indemnitors. The Principal and each of the Indemnitors are obligated to provide to the Surety prompt notice of change of any address listed herein.

B-2 Revised (11/09)

Initial _RA_ _AA_ _____ _____

(c)     The Indemnitors hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors.  *The Indemnitors specifically acknowledge that the Surety* *shall not be required to notify the Indemnitors of any material change in the Principal's financial condition.*

23.     General Provisions.

(a)     This Agreement applies to all Bonds executed or procured by the Surety for the Principal or the Indemnitors or any one of them in their names or as co-venturer with others, successors, assigns, subsidiaries, parent or affiliates, partnership, joint venture, incorporation, whether now existing or formed hereafter, and whether partially or wholly owned and controlled, as fully as if the names of such subsidiaries or affiliates appeared herein as Principal and whether executed or issued prior or subsequent to the execution of this Agreement.

(b)     The rights and remedies afforded to the Surety by the terms of this Agreement may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of the Surety.  The execution of additional agreements by the Principal or any of the Indemnitors shall not modify the Principal's or any of the Indemnitor's obligations hereunder unless specifically stated in any additional agreements.

(c)     THE PRINCIPAL AND INDEMNITORS WAIVE AND SUBORDINATE ALL RIGHTS OF INDEMNITY, SUBROGATION AND CONTRIBUTION EACH AGAINST THE OTHER HOWEVER DERIVED UNTIL ALL OBLIGATIONS TO THE SURETY UNDER THIS INDEMNITY AGREEMENT HAVE BEEN SATISFIED IN FULL.

(d)     The Principal and Indemnitors acknowledge the Surety's right to enforce the provisions of this Agreement through the equitable action of Quia Timet, which among other rights, enables the Surety to seek deposits as security for anticipated losses.  The Principal and Indemnitors acknowledge that, the reasonable apprehension of future losses, uncertain in amount, constitutes irreparable injury.

(e)     Bonds Executed Prior to Agreement.  The Principal and Indemnitors expressly recognize and covenant that this Agreement is a continuing obligation applying to and indemnifying the Surety as to any and all Bonds (regardless of whether covered by any application signed by Principal and Indemnitors; such application to be considered between the parties hereto as merely supplemental to this Agreement) heretofore and hereafter executed by Surety on behalf of Principal (whether contracting alone or as a Co-Venturer) until this Agreement shall be terminated by Principal and Indemnitors in the manner herein provided.

24.     Joint and Several Liability.  The obligation of the Principal and Indemnitors hereunder are joint and several.  The Surety is authorized to settle any liability hereunder with the Principal and any one or more of the Indemnitors without reference to others, and such settlement shall not affect the liability of the others.  Release of the Principal or one or more Indemnitors shall not affect the liability of the others.

25.     Representations.

(a.)    Accuracy of Financial Information:  Principal and Indemnitors have provided financial and other information to Surety concerning their financial condition.  Principal and Indemnitors represent that such information is materially accurate in all respect, and that they have consulted with such professionals as they may have required in order to make this representation.  They further acknowledge and agree that this representation is a material inducement to the Surety to issue bonds in favor of the Principal, and that Surety has justifiably relied on such representations in making a decision to issue the Bonds.  All financial information, including, without limitation, documents and schedules, which has been provided to the Surety by the Principal and Indemnitors, whether provided prior to or subsequent to, the execution of this Agreement, is incorporated by herein reference thereto.

(b).    Obligation to Notify Surety of Contract Changes:  Principal and Indemnitors acknowledge and agree that they have an obligation to notify Surety promptly concerning any matter which materially affects their obligations under any bonded contract, including, without limitation, of any change orders which involve sums in excess of 10% (ten percent) of the bonded contract price.

(c).    THE PRINCIPAL AND INDEMNITORS HAVE READ AND FULLY UNDERSTAND THIS AGREEMENT OF INDEMNITY.  EXCEPT FOR ANY PREVIOUSLY EXECUTED INDEMNITY AGREEMENT OR AGREEMENTS EXECUTED BY THE PRINCIPAL OR THE INDEMNITORS OR ANY ONE OF THEM, THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND IT INCORPORATES ALL PRIOR NEGOTIATIONS AND CORRESPONDENCE BETWEEN THE PARTIES, WHETHER WRITTEN OR ORAL AND IT MAY NOT BE MODIFIED EXCEPT IN WRITING SIGNED BY BOTH PARTIES.  NO OTHER SEPARATE AGREEMENTS OR UNDERSTANDINGS MAY LESSEN OR CHANGE THE TERMS OF THIS AGREEMENT.  THIS AGREEMENT DOES NOT MODIFY, BAR, LIMIT, AFFECT OR IMPAIR THE OBLIGATIONS OF THE PRINCIPAL OR ANY OF THE INDEMNITORS UNDER ANY PREVIOUSLY EXECUTED INDEMNITY AGREEMENT.

B-2 Revised (11/09)

Initial  RA  AW

26.   CONFESSION OF JUDGMENT.  WITHOUT LIMITING THE GENERALITY OF ANY OTHER PROVISION OF THIS AGREEMENT, THE UNDERSIGNED PRINCIPAL AND INDEMNITORS HEREBY JOINTLY SEVERALLY AND IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OF RECORD OR PROTHONOTARY OR CLERK OF ANY COURT IN ANY JURISDICTION TO APPEAR FOR ANY OR ALL OF THEM AT ANY TIME OR TIMES IN ANY COURT WITH RESPECT TO ANY SUMS DUE UNDER THIS AGREEMENT, WITH OR WITHOUT DECLARATION FILED AS OF ANY TERM, TO WAIVE THE ISSUING AND SERVICE OF PROCESS AND TO CONFESS OR ENTER JUDGMENT AGAINST ANY OR ALL OF THEM FOR ALL SUCH SUMS PAYABLE UNDER THIS AGREEMENT AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN AUTHORIZED REPRESENTATIVE OF SURETY SETTING FORTH SUCH AMOUNT DUE, PLUS REASONABLE ATTORNEY'S FEES, COSTS OF SUIT AND INTEREST, WITH RELEASE OF ALL PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL OR STAY OF EXECUTION.  IF A COPY OF THIS AGREEMENT, VERIFIED BY AFFIDAVIT, SHALL BE FILED, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OR ATTORNEY.  THE UNDERSIGNED JOINTLY AND SEVERALLY WAIVE THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ANY AND ALL EXEMPTIONS TO WHICH THEY MAY NOW OR MAY HEREAFTER BE ENTITLED UNDER LAW.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING AN ACTION OR CONFESS JUDGMENT SHALL BE DEEMED TO EXHAUST THE POWER BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS SURETY SHALL ELECT, WHETHER BEFORE OR AFTER DEMAND IS MADE, UNTIL ALL SUMS PAYABLE TO SURETY UNDER THIS AGREEMENT HAVE BEEN PAID IN FULL.

PRINCIPAL AND EACH OF THE INDEMNITORS REPRESENTS AND WARRANTS THAT HE OR SHE HAS READ THE FOREGOING CONFESSION OF JUDGMENT AND UNDERSTANDS THAT HE OR SHE IS GIVING UP THE RIGHT TO A HEARING BEFORE JUDGMENT IS CONFESSED, LEVY AND EXECUTION MADE, AND THAT EACH GIVES UP THE RIGHT TO SUCH HEARING FREELY AND VOLUNTARILY IN THIS BUSINESS TRANSACTION.

27.   WAIVER OF JURY TRIAL:  BY THEIR EXECUTION AND DELIVERY OF THIS AGREEMENT, PRINCIPAL AND INDEMNITORS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THAT IT, HE, SHE, OR THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED UPON, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF SURETY, OR ANY OF THE OTHER PARTIES TO THIS AGREEMENT, IN CONNECTION HEREWITH, OR ANY OTHER MATTER WHATSOEVER RELATING TO THE ACTIONS OR INACTIONS OF SURETY ARISING OUT OF OR RELATING TO THIS AGREEMENT.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR SURETY TO ENTER INTO THIS AGREEMENT.

28.   For OHIO Residents and Domiciliaries.  WARNING – BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT CAN BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR, WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT OR ANY OTHER CAUSE.

29.   For VIRGINIA Residents and Domiciliaries.  IMPORTANT NOTICE:  THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

30.   No Third Party Beneficiaries:  No rights are intended to be created hereunder for the benefit of any third party, whether creditor, incidental beneficiary or otherwise.

THE EXECUTION OF ANY BOND BY THE SURETY IS MADE IN RELIANCE UPON FINANCIAL INFORMATION PROVIDED BY THE PRINCIPAL AND THE INDEMNITORS, AND SAID FINANCIAL INFORMATION IS INCORPORATED HEREIN BY REFERENCE THERETO.

Initial _R4_ _AY4_ _____ _____

B-2 Revised (11/09)

IN WITNESS WHEREOF, we have hereunto set our hands and seals the date and year first above written:

ATTEST OR WITNESS:

**RAKS Fire Sprinkler, LLC**
(Full Name of Principal)

**215 Mobile Street, Hattiesburg, MS 39401**
(Full Address of Principal)

By: _____

_____
Attest or Witness

(Signature of Principal, Partner, or Sole Proprietor)  **(Corporate Seal)**
**Romero Ali, Managing Member**

_____
(Witness)

Tax ID # █████████

_____ (L. S.)
(Signature of Indemnitor)
**Romero Ali, Individual**

SS# of Indemnitor █████████

**10007 NE 12th Street, Apt #108, Bellevue, WA 98004**
(Full Name and Address of Indemnitor)

_____
(Witness)

_____ (L. S.)
(Signature of Indemnitor)
**Alia Ali, Individual**

SS# of Indemnitor █████████

**10007 NE 12th Street, Apt #108, Bellevue, WA 98004**
(Full Name and Address of Indemnitor)

_____
(Witness)

_____ (L. S.)
(Signature of Indemnitor)
**Rashad Ali, Individual**

SS# of Indemnitor █████████

**302 First Hopewell Rd, Sumrall, MS 39482**
(Full Name and Address of Indemnitor)

_____
(Witness)

_____ (L. S.)
(Signature of Indemnitor)
**Donna A. Ali, Individual**

SS# of Indemnitor █████████

**302 First Hopewell Rd, Sumrall, MS 39482**
(Full Name and Address of Indemnitor)

_____
(Witness)

_____ (L. S.)
(Signature of Indemnitor)

SS# of Indemnitor _____

_____
(Full Name and Address of Indemnitor)

_____
(Witness)

_____ (L. S.)
(Signature of Indemnitor)

SS# of Indemnitor _____

_____
(Full Name and Address of Indemnitor)

**Aegis Security Insurance Company**

By: _____
(Reviewed/Approved by Home Office)

Initial RA AH ⟨initials⟩

B-2 Revised (11/09)

8

For Acknowledgement of **PRINCIPAL'S** Signature

### INDIVIDUAL ACKNOWLEDGEMENT

STATE OF )
COUNTY OF ) ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

### PARTNERSHIP ACKNOWLEDGEMENT

STATE OF )
COUNTY OF ) ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, a member of the co-partnership of _____, to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

### CORPORATE ACKNOWLEDGEMENT

STATE OF )
COUNTY OF ) ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____ that he is the President of the _____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

### CORPORATE ACKNOWLEDGEMENT

STATE OF WASHINGTON )
COUNTY OF KING ) ss:

On this 16TH day of SEP, in the year 2016, before me personally come(s) Romero Ali, to me known, who, being by me duly sworn, deposes and says that he resides in the City of Bellevue that he is the Managing Member of the Raks Fire Sprinkler, LLC The corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

Initial _____

RYAN MAXFIELD
COMMISSION EXPIRES
NOTARY
PUBLIC
STATE OF WASHINGTON
09 01 2018

B-2 Revised (11/09)

9

For Acknowledgement of **INDEMNITORS'** Signatures

### INDIVIDUAL ACKNOWLEDGEMENT ✓

STATE OF WASHINGTON )
COUNTY OF   KING )   ) ss:

On this 16TH day of SEP , in the year 2016, before me personally come(s) Romero and Alia Ali, to me known and know to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

RYAN MAXFIELD
COMMISSION EXPIRES
NOTARY
PUBLIC
09/01/2018
STATE OF WASHINGTON

### INDIVIDUAL ACKNOWLEDGEMENT

STATE OF   )
COUNTY OF   ) ss:

On this 16th day of Sept, in the year 2016, before me personally come(s) Rashad and Donna A. Ali, to me known and know to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 107577
ELIZABETH LOUISE KING
Commission Expires:
Jan. 1, 2018
FORREST COUNTY

### INDIVIDUAL ACKNOWLEDGEMENT

STATE OF   )
COUNTY OF   ) ss:

On this _____ day of _____, in the year _____, before me personally come(s) _____, to me known and know to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

### CORPORATE ACKNOWLEDGEMENT

STATE OF   )
COUNTY OF   ) ss:

On this _____ day of _____, in the year _____, before me personally come(s) _____, to me know, who, being by me duly sworn, deposes and says the he resides in the City of _____ that he is the _____ of the _____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

B-2 Revised (11/09)

Initial RA _____

10

AEGIS SECURITY INSURANCE COMPANY

v.

RAKS FIRE SPRINKLER, LLC, ROMERO ALI, ALIA ALI, RASHAD ALI AND DONNA A. ALI

**PLAINTIFF'S EXHIBIT 2**

2

*Attachment #4*

## AEGIS SECURITY INSURANCE COMPANY

4507 N. Front Street, SUITE 200 P.O. Box 3153
HARRISBURG, PA  17110
(717) 657-9571 - Fax: (717) 657-5837

## PERFORMANCE BOND

Bond # BDS 001 179

Approved by The American Institute of Architects,
A.I.A. Document No. A 311 February 1970 Edition

KNOW ALL MEN BY THESE PRESENTS that: RAKS Fire Sprinkler

215 Mobile Street
Hattiesburg, MS 39401

as Principal, hereinafter called Contractor, and, **AEGIS SECURITY INSURANCE COMPANY**

**4507 N. Front Street, Suite 200**
**Harrisburg, PA  17110**

as Surety, hereinafter called Surety, are held and firmly bound unto Goudy Construction, Inc.

3417 Davey Allison Blvd
Hueytown, AL 35023

as Obligee, hereinafter called Owner, in the amount of Seven Hundred Eighty-Seven Thousand Four Hundred Fourteen Dollars ($787,414.00) for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS
Contractor has by written agreement dated, _July 28th, 2017_
Contract # FA330017C0020 _____entered into a contract with Owner for which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work

progresses (even though there should be a default or a succession of defaults under the contract or contracts or completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price, but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balances of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

Signed and sealed this  1st day of September, 2017.

| | |
|---|---|
| _____ (Witness) | RAKS Fire Sprinkler _____ (Principal)          (Seal) _____ (Title) |
| _____ Ryan Havelow          (Witness) | AEGIS SECURITY INSURANCE COMPANY _____ (Surety)          (Seal) R. Clay Foltz          (Title)   Attorney-In-Fact |

## AEGIS SECURITY INSURANCE COMPANY

4507 N. Front Street, Suite 200, P.O. Box 3153
Harrisburg, PA 17110
(717) 657-9671 - Fax: (717) 657-5837

# LABOR AND MATERIAL PAYMENT BOND

Bond # BDS 001 179

The American Institute of Architects, A.I.A. Document No. A 311 February 1970 Edition
THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS that: RAKS Fire Sprinkler
215 Mobile Street
Hattiesburg, MS 39401

as Principal, hereinafter called Principal, and: **AEGIS SECURITY INSURANCE COMPANY**
**4507 N. Front Street, Suite 200**
**Harrisburg, PA 17110**

as Surety, hereinafter called Surety, are held and firmly bound unto: Goudy Construction, Inc.
3417 Davey Allison Blvd
Hueytown, AL 35023

as Obligee, hereinafter called Owner, for the use and benefit of claimants as herein below defined,
in the amount of Seven Hundred Eighty Seven Thousand Four Hundred Fourteen Dollars ($787,414.00) for the payment whereof Principal and Surety bind themselves,
their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,
Principal has by written agreement dated July 28th, 2017 entered into a contract with Owner for
Contract # FA330017C0020 in accordance with Drawings and Specifications prepared by (N/A) which
contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is
such that, if Principal shall promptly make payment to all claimants as
hereinafter defined, for all labor and material used or reasonably required for
use in the performance of the Contract, then this obligation shall be void;
otherwise it shall remain in full force and effect, subject, however, to the
following conditions:

1. A claimant is defined as one having a direct contract with the
Principal or with a Subcontractor of the Principal for labor, material, or both,
used or reasonably required for use in the performance of the Contract,
labor and material being construed to include that part of water, gas, power,
light, heat, oil, gasoline, telephone service or rental of equipment directly
applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally
agree with the Owner that every claimant as herein defined, who has not
been paid in full before the expiration of a period of ninety (90) days after the
date on which the last of such claimant's work or labor was done or
performed, or materials were furnished by such claimant, may sue on this
bond for the use of such claimant, prosecute the suit to final judgment for
such sum or sums as may be justly due claimant, and have execution
thereon. The Owner shall not be liable for the payment of any costs or
expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant
a) Unless claimant, other than one having a direct contract with the
Principal, shall have given written notice to any two of the following: the
Principal, the Owner, or the Surety above named, within ninety (90) days

After such claimant did or performed the last of the work or labor, or
furnished the last of the materials for which said claim is made, stating with
substantial accuracy the amount claimed and the name of the party to whom
the materials were furnished, or for whom the work or labor was done or
performed. Such notice shall be served by mailing the same by registered
mail or certified mail, postage prepaid, in an envelope addressed to the
Principal, Owner or Surety, at any place where an office is regularly
maintained for the transaction of business, or served in any manner in which
legal process may be served in the state in which the aforesaid project is
located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which
Principal ceased Work on said Contract, it being understood, however that if
any limitation embodied in this bond is prohibited by any law controlling the
construction hereof such limitation shall be deemed to be amended so as to
be equal to the minimum period of limitation permitted by such law.

c) Other than in a state court of competent jurisdiction in and for the
county or other political subdivision of the state in which the Court for the
district in which the Project, or any part thereof, is situated, and not
elsewhere.

4. The amount of this bond shall be reduced by and to the extent of
any payment or payments made in good faith hereunder, inclusive of the
payment by Surety of mechanics' liens which may be filed of record against
said improvement, whether or not claim for the amount of such lien be
presented under and against this bond.

Signed and sealed this 1st day of September, 2017.

_____ (Witness)

_____
Ryan Havelow        (Witness)

RAKS Fire Sprinkler
_____
(Principal)            (Seal)

_____
(Title)

AEGIS SECURITY INSURANCE COMPANY
_____
(Surety)            (Seal)

R. Clay Foltz        (Title)    Attorney-In-Fact

B-101 (10/95)

THIS POWER NULL AND VOID IF NUMBER IS NOT IN RED

POWER CERTIFICATE NO. DE 071

# AEGIS SECURITY INSURANCE COMPANY
## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS, THAT AEGIS SECURITY INSURANCE COMPANY** does hereby make, constitute and appoint:   **R. CLAY FOLTZ, COLIN R.M.J. BONINI, M. KATELYN FOLTZ**

its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf surety bonds, undertaking and other instruments of similar nature as follows:   **$5 MILLION**

This Power of Attorney is granted and sealed under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 4th day of February, 1993.

**"Resolved,** That the President, any Vice President, the Secretary and any Assistant Secretary appointed for that purpose by the officer in charge of surety operations shall each have authority to appoint individuals as Attorney-in-Fact or under other appropriate titles with authority to execute on behalf of the Company, fidelity and surety bonds and other documents of similar character issued by the Company in the course of its business. On any instrument making or evidencing such an appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the Company, the seal or facsimile thereof may be imposed or fixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

**"Resolved,** That the signature of each of the following officers;   President,  Vice President, any Assistant Vice President,  any Secretary or Assistant Secretary and the seal of the  Company may be affixed by facsimile to any  Power of Attorney  or to any Certificate relating thereto, appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for the purpose only of executing and attesting bonds and undertaking and other writings  upon the Company  and any such power  required  and  certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or undertaking to which it is attached."

**IN WITNESS WHEREOF, AEGIS SECURITY INSURANCE COMPANY** has caused its official seal to be hereunto affixed, and these presents to be signed by its President this 5th day of July, 2017.

AEGIS SECURITY INSURANCE COMPANY

By: *W. J. Wollyung*

W. J. WOLLYUNG, III
President

Commonwealth of Pennsylvania   }
                                }  s.s.: Harrisburg
County of Dauphin               }

On this 5th day of July, 2017, before me personally came William J. Wollyung, III to me known, who being by me duly sworn, did depose and say that he is President of **AEGIS SECURITY INSURANCE COMPANY**, the corporation described herein and which executed the above instrument; that he knows  the seal of the said corporation, that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

*Jeanne LP Tennis*

JEANNE LP TENNIS
Notary Public
My Commission Expires June 16, 2021

I, the undersigned, Secretary of **AEGIS SECURITY INSURANCE COMPANY**, a Pennsylvania corporation, **DO HEREBY CERTIFY** that the foregoing and attached Power of Attorney remains in full force and has not been revoked: and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the City of Harrisburg, in the Commonwealth of Pennsylvania, dated this *1st* day of *September*, 2017.

REBECCA J. LIDDICK
Secretary

## AEGIS SECURITY INSURANCE COMPANY
## STATEMENTS OF ADMITTED ASSETS, LIABILITIES, CAPITAL AND SURPLUS - STATUTORY BASIS

| | As of December 31, | |
| --- | --- | --- |
| | 2016 | 2015 |
| **Admitted Assets** | | |
| Bonds | | |
| Preferred stocks | $  50,929,359 | $  48,627,914 |
| Common stocks - non-affiliate | 446,212 | 500,200 |
| Common stocks - affiliate | 8,406,062 | 11,178,670 |
| Real estate occupied by the Company, net | 16,949,467 | 15,818,252 |
| Cash and short-term investments | - | 2,153,047 |
| Other invested assets | 12,732,874 | 11,907,020 |
| | 3,750,000 | 908,157 |
| Total cash and invested assets | 93,213,974 | 91,093,260 |
| Accrued investment income | 482,598 | 451,224 |
| Premium receivable | 26,115,723 | 14,038,030 |
| Reinsurance recoverable on paid losses | 3,450,058 | 2,292,443 |
| Federal income tax receivable | 467,965 | 1,204,940 |
| Net admitted deferred tax asset | 3,665,301 | 2,428,736 |
| Other assets | 35,311 | 48,744 |
| Receivable from parent, subsidiaries and affiliates | 6,700 | 173,000 |
| Total assets | $  127,437,630 | $  111,730,377 |
| **Liabilities, Capital and Surplus** | | |
| Liabilities: | | |
| Losses and LAE | $  23,278,093 | $  18,954,753 |
| Reinsurance payable on paid loss and LAE | 345,036 | 390,320 |
| Unearned premiums | 32,215,782 | 25,915,526 |
| Commissions payable | 868,762 | 713,492 |
| Accounts payable and accrued expenses | 520,097 | 783,236 |
| Taxes, licenses and fees payable | 806,060 | 756,684 |
| Ceded reinsurance premiums payable | 9,283,899 | 2,658,726 |
| Funds held under reinsurance treaties | 2,346 | - |
| Amounts withheld for account of others | 4,570,068 | 4,915,625 |
| Payable for securities | 7,422 | 198,015 |
| Total liabilities | 71,897,565 | 55,286,377 |
| Capital and surplus: | | |
| Common stock, par value $1.40 per share; 5,000,000 shares authorized; 3,000,000 issued and outstanding | 4,200,000 | 4,200,000 |
| Paid-in surplus | 5,266,827 | 5,266,827 |
| Unassigned funds | 46,073,238 | 46,977,173 |
| Total capital and surplus | 55,540,065 | 56,444,000 |
| Total liabilities, capital and surplus | $  127,437,630 | $  111,730,377 |

AEGIS SECURITY INSURANCE COMPANY

v.

RAKS FIRE SPRINKLER, LLC, ROMERO ALI, ALIA ALI,
RASHAD ALI AND DONNA A. ALI

**PLAINTIFF'S EXHIBIT 3**



4507 N Front St • Suite 200 • Harrisburg, PA 17110-1787
PO Box 3153 • Harrisburg, PA 17105-3153
Phone: 800-233-2160 • Local: 717-657-9671

January 8, 2021

**VIA CERTIFIED, REGULAR U.S. MAIL & E-MAIL:** rali75@yahoo.com
RAKS Fire Sprinkler, LLC
215 Mobile St.
Hattiesburg, MS 39401

**VIA CERTIFIED, REGULAR U.S. MAIL & E-MAIL:** rali75@yahoo.com
Romero Ali
302 First Hopewell Rd.
Sumrall, MS 39482

**VIA CERTIFIED & REGULAR U.S. MAIL**
Alia Ali
4424 Shamrock Lane
Montgomery, AL 36106-3535

**VIA CERTIFIED, REGULAR U.S. MAIL & E-MAIL:** aliinmiss@aol.com
Donna Ali
302 First Hopewell Rd.
Sumrall, MS 39482

**VIA CERTIFIED, REGULAR U.S. MAIL & E-MAIL:** aliinmiss9@aol.com
Rashad Ali
302 First Hopewell Rd.
Sumrall, MS 39482

Re:     Principal:      RAKS Fire Sprinkler, LLC ("Principal")
        Surety:         Aegis Security Insurance Company ("Surety" or "Aegis")
        Project:        Maxwell AFB B856
        Bond No:        BDS 001 179

Dear Indemnitors and Principal;

On August 24, 2020 I noticed you of Aegis' demand for $110,000 in collateral. To date, Aegis has not received this amount or discussion regarding how Aegis will receive this amount. With the claim against the bond in the amount of the $787,414 performance bond plus other costs, Aegis herein now demands $912,441.73.

As you know, the Surety provided multiple surety bonds for the referenced Principal, to include the above-referenced bond for the referenced Project. You each executed the attached Agreement of Indemnity ("Indemnity Agreement") whereby you agree to "exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all claims, demands, and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including but not limited to interest, court costs, counsel fees, and/or investigative costs), and from and against any and all other such losses and expenses which the Surety may sustain or incur . . . " as a consequence of the Surety having issued any surety bonds on behalf of the Principal, in investigating any claims or suits against the Surety or its bonds and defending against same, and in enforcing the terms and conditions of the Indemnity Agreement.

Page 2 of 2

January 8, 2021
Collateral Demand Letter to RAKS and Indemnitors

The Surety has paid loss and expenses as a resulting of writing the referenced bond, to include payment bond loss, administrative, consultant, attorney, and other expenses, and has also been placed in a position of exposure to incur additional loss, costs, and expenses, all a result of having issued surety bonds on behalf of the Principal. As a result of this exposure and loss and expenses incurred, the Surety now looks to you, as an indemnitor of Surety, to deposit collateral with the Surety through payment in the amount of Nine Hundred Twelve Thousand Four Hundred Forty-One and 73/100 ($912,441.73); the amount the Surety herein deems at this time sufficient to protect it from the above stated exposure.

If a time comes when the Surety determines its exposure to be less than the above stated amount, it will return the difference, or if it deems its exposure to be greater, it will make a demand for the increase.

This correspondence is made with an express reservation of all of Aegis' rights, remedies, and defenses, whether at law or in equity.

Kind regards,

Kim Moore
Senior Claims Consultant, Surety
On Point Risk Solutions, Inc.
Authorized Aegis Security Insurance Company Representative
Email:  kmoore@onpointrisk.com

Cc: Aegis; The Bond Agency

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com
**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><br>Plaintiff,<br><br>v.<br><br>RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>Defendants. | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.: 2021 CV 318 NT |

RECEIVED
OFFICE OF
PROTHONOTARY
2021 JAN 13 PM 12:40

**AFFIDAVIT OF KIMBERLY R. MOORE**
**IN SUPPORT OF CONFESSION OF JUDGMENT**

I, KIMBERLY R. MOORE, SENIOR SURETY CONSULTANT, FOR ON POINT RISK SOLUTIONS, INC., AND DULY AUTHORIZED AFFIANT FOR PLAINTIFF, AEGIS SECURITY INSURANCE COMPANY IN THE ABOVE-CAPTIONED MATTER, AM COMPETENT TO TESTIFY TO THE MATTERS HEREIN AND MAKE THE FOLLOWING STATEMENT UPON INFORMATION AND BELIEF:

4

1.     I repeat, reallege and incorporate the allegations of the Complaint for Confession of Judgment as if fully set forth herein.

2.     Aegis has received and paid the following claims on the Bonds to date:

   (a)     Aegis received and paid payment bond claim from Brendle Fire Equipment, Inc. against Bond No.: BDS 001 179 on the AFB Project in the amount of $20,702.90 and

   (b)     Aegis received and paid payment bond claim from Williamson Industries, Inc. against Bond No.: BDS 001 179 on the AFB Project in the amount of $1,980.00; and

   (c)     Aegis has received a performance bond claim from Owner/Obligee, Goudy Construction, Inc., in the amount of $787,414.00 under the Bond; and

   (d)     Aegis has collected $3,741.00 to date.

3.     The total of the claims paid by Aegis as set forth in paragraph 2 above on behalf of Principal, RAKS, minus the $3,741.00 collected to date is $18,941.90, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29. In addition, Aegis has received a demand under the performance bond in the amount of $787,414.00. Aegis disputes and reserves all rights and defenses to such performance bond claim and is currently defending an action brought under that performance bond.

4.     Aegis seeks entry of judgment in the amount of $912,441.73 (which includes claims paid and the performance bond exposure in the amount of $810,096.90, less the subrogation payments received to date of $3,741.00, plus attorney's fees of $62,455.54 and investigative and expert costs of $43,630.29). Aegis reserves all rights and defenses as to all such claims.

5.     Aegis reserves all rights and defenses to any claim brought against it including but not limited to the payment and performance bond claims referenced in paragraph 2 above.

6.     Defendants have failed to pay Aegis for any of the losses that Aegis incurred or will incur under the Bonds.

7.     Aegis is owed the sum of $912,441.73, plus interest at the rate of six percent (6%) per annum.

5

8.    Aegis reserves the right to further exercise the warrant under paragraph 26 of the AOI to confess judgment against Defendants for future payments, losses, claims, expenses and fees.

STATE OF VIRGINIA
COUNTY OF LOUDOUN

I, KIMBERLY R. MOORE, SENIOR SURETY CONSULTANT FOR ON POINT RISK SOLUTIONS, INC., AND DULY AUTHORIZED AFFIANT FOR PLAINTIFF, AEGIS SECURITY INSURANCE COMPANY, SOLEMNLY SWEAR OR AFFIRM UNDER THE PENALTIES OF PERJURY THAT I HAVE FULLY READ THE CONTENTS OF THE FOREGOING AFFIDAVIT IN SUPPORT OF CONFESSION OF JUDGMENT AGAINST DEFENDANTS, RAKS FIRE SPRINKLER, LLC, ROMERO ALI, ALIA ALI, RASHAD ALI AND DONNA ALI, AND SUCH CONTENT IS TRUE AND CORRECT UPON MY PERSONAL KNOWLEDGE.

Dated: 01/08/2021

Kimberly R. Moore, Senior Surety Consultant
On Point Risk Solutions, Inc., as Authorized
Aegis Security Insurance Company Representative

Sworn to and subscribed
before me this 8 day
of January , 2021.

Notary Public

01/08/2021

SASI REKHA SARAVANAN
Notary Public
Commonwealth of Virginia
Registration No. 7729768
My Commission Expires Feb 28, 2021

6

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110 | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY |
| Plaintiff, | CIVIL ACTION – LAW |
| v. | NO.: _2021 CV 318 NT_ |
| RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401 | |
| ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004 | |
| ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004 | |
| RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482 | |
| DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482 | |
| Defendants. | |

## AFFIDAVIT OF NON-MILITARY SERVICE, ETC.

Kimberly R. Moore states that she is a Senior Surety Consultant for On Point Risk Solutions, Inc., and authorized representative for Aegis Security Insurance Company, plaintiff in the above-captioned matter; that she is duly authorized to make this Affidavit on its behalf; that the facts herein set forth are true and correct to the best of her knowledge, infor-

1

mation and belief; that RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, defendants, in the above-captioned matter are not in the Military or Naval Service of the United States, nor any state or territory thereof or its allies, as defined in the Soldier's and Sailor's Civil, Relief Act of 1940, as amended.

This Affidavit of Non-Military Service regarding the Complaint for Confession of Judgment against RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali, is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: ___01/08/2021___

Kimberly R. Moore, Senior Surety Consultant
On Point Risk Solutions, Inc., as Authorized
Aegis Security Insurance Company Representative

Sworn to and subscribed
before me this  8  day
of January , 2021.

_____
Notary Public

SASI REKHA SARAVANAN
Notary Public
Commonwealth of Virginia
Registration No. 7729768
My Commission Expires Feb 28, 2021

2

Filed By: Michael F.J. Romano
ROMANO, GARUBO & ARGENTIERI
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ  08096
(856) 384-1515
Email:  mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><br>v.              Plaintiff, | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.:   _2021 Cv  318 NT_ |
| RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>                 Defendants. | |

2021 JAN 13  PM 12: 40

## AFFIDAVIT OF FEES AND COSTS

Kimberly R. Moore states that she is a Senior Surety Consultant for On Point Risk

Solutions, Inc., and authorized representative for Aegis Security Insurance Company, plaintiff in

the above-captioned matter; and that, to the best of her knowledge, information and belief.

3

1.      I repeat, reallege and incorporate the allegations of the Complaint for Confession of Judgment as if fully set forth herein.

2.      Paragraph 3(a) of the AOI provides Aegis the right to indemnity resulting from the above described acts of default and payments of claims and expenses as follows:

> The Principal and Indemnitors shall exonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including but not limited to interest, court costs, counsel fees, and/or investigative costs), and from and against any and all other such losses and expenses which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of the Principal or any one or more of the Indemnitors to perform or comply with any of the covenants, terms or conditions of this Agreement; (iii) in enforcing any of the covenants or conditions of this Agreement; (iv) in making an investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover losses, expenses, or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether the Surety, at its sole option, elects to employ its own counsel or permits or requires the Principal to make arrangements for the Surety's legal representation.

3.      Attached is a breakdown of the claims paid by Aegis to date.  The total amount of claims paid, minus the $3,471.00 collected to date, is $18,941.90.  In addition, Aegis has received a demand under the performance bond in the amount of $787,414.00.  Aegis disputes and reserves all rights and defenses to such performance bond claim and is currently defending an action brought under that performance bond.

4.      Aegis also seeks judgment for attorney's fees and costs of no less than $62,455.54 and investigative and expert costs of $43,630.29, which have been paid by Aegis to date.  Aegis reserves the right to seek the entry of additional confessions of judgment as may become necessary based on future claims and expenses.

4

## RAKS FIRE SPRINKLER LLC

| | |
|---|---|
| Last Updated 1/6/21 | |
| Bond # / Claim # | NAVFAC Mid Atlantic BDS 001 179 / 817923 |
| Penal Sum | $787,414 |
| Effective Date | 9/1/2017 |

| | | |
|---|---|---|
| Brendle Fire Equipment, Inc. | 6/28/2019 | $20,702.90 |
| Williamson Industries, Inc. | 7/25/2019 | $1,980.00 |
| TOTAL LOSS PAID | | $22,682.90 |
| TOTAL LEGAL PAID | | $62,455.54 |
| TOTAL EXPERT PAID | | $43,630.29 |
| SUBROGATION REC'D | | -$3,741.00 |
| CURRENT LOSS | | $125,027.73 |
| Performance Bond Claim | | $787,414.00 |
| TOTAL DUE | | $912,441.73 |

| LEGAL PAYMENTS | | |
|---|---|---|
| CSC (UCC Filing) | 3/28/2019 | $114.00 |
| Whiteford Taylor & Preston | 9/11/2019 | $1,202.00 |
| Law Firm of Starnes Davis Florie, LLP | 10/21/2019 | $14,921.34 |
| | 2/11/2020 | $18,895.10 |
| | 3/11/2020 | $1,176.00 |
| | 4/7/2020 | $1,560.65 |
| | 5/15/2020 | $2,164.40 |
| | 6/3/2020 | $7,815.15 |
| | 9/8/2020 | $8,429.05 |
| | 10/6/2020 | $2,781.80 |
| | 11/24/2020 | $3,396.05 |
| TOTAL LEGAL | | $62,455.54 |

**EXPERT PAYMENTS**

On Point

| Date | Amount |
| --- | --- |
| 1/9/2019 | $195.00 |
| 2/1/2019 | $390.00 |
| 3/5/2019 | $15.00 |
| 4/15/2019 | $7,227.50 |
| 5/13/2019 | $5,662.98 |
| 6/26/2019 | $780.00 |
| 6/28/2019 | $2,281.00 |
| 7/26/2019 | $1,290.00 |
| 9/13/2019 | $1,159.00 |
| 10/29/2019 | $1,412.50 |
| 11/5/2019 | $876.00 |
| 12/9/2019 | $1,970.00 |
| 1/7/2020 | $1,383.50 |
| 2/5/2020 | $3,022.50 |
| 3/13/2020 | $1,191.50 |
| 4/17/2020 | $181.50 |
| 5/26/2020 | $1,382.00 |
| 6/19/2020 | $706.00 |
| 7/28/2020 | $3,287.50 |
| 8/20/2020 | $45.00 |
| 10/2/2020 | $963.00 |
| 10/14/2020 | $701.00 |
| 11/17/2020 | $781.00 |
| 1/4/2021 | $1,384.00 |
| 3/5/2019 | $1,230.31 |
| 11/24/2020 | $4,112.50 |

Coste Consulting

Forcon International-PA, Ltd.

TOTAL EXPERT          $43,630.29

Filed By: **Michael F.J. Romano**
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
**52 Newton Avenue, P.O. Box 456**
**Woodbury, NJ 08096**
**(856) 384-1515**
Email:  mromano@rgalegal.com

Attorney for Plaintiff, Aegis Security Insurance Company

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><br>                              Plaintiff,<br><br>        v.<br><br>RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>                           Defendants. | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.: _2021 CV 318 NT_ |

## AFFIDAVIT OF BUSINESS TRANSACTION

Kimberly R. Moore states that she is a Senior Surety Consultant for On Point Risk Solutions, Inc., and authorized representative for Aegis Security Insurance Company, plaintiff in the above-captioned matter; and that, to the best of her knowledge, information and belief, the

debt involved arises from a business transaction and not from a consumer transaction or a retail sales agreement or contract.

        This Affidavit of Business Transaction concerning the Confession of Judgment against RAKS Fire Sprinkler, LLC, Romero Ali, Alia Ali, Rashad Ali and Donna A. Ali is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: 01 / 08 / 2021

Kimberly R. Moore, Senior Surety Consultant
On Point Risk Solutions, Inc., as Authorized
Aegis Security Insurance Company Representative

Sworn to and subscribed
before me this 8 day
of January , 2021.

Notary Public

SASI REKHA SARAVANAN
Notary Public
Commonwealth of Virginia
Registration No. 7729768
My Commission Expires Feb 28, 2021

7

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110 | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY |
| Plaintiff, | CIVIL ACTION – LAW |
| v. | NO.: _2021 CV 318 NT_ |
| RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401 | |
| ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004 | |
| ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004 | |
| RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482 | |
| DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482 | |
| Defendants. | |

## AFFIDAVIT OF ADDRESSES AND CONJUGAL INCOME

Kimberly R. Moore states that she is a Senior Surety Consultant for On Point Risk

Solutions, Inc. and authorized representative for Aegis Security Insurance Company, plaintiff in

the above-captioned matter; that she is authorized to make this affidavit on behalf of plaintiff;

that the facts set forth in the foregoing Complaint are true and correct to the best of her

1

knowledge, information and belief; and that to the best of her knowledge, information and belief, the income of defendant is in excess of $10,000.00.

Affiant also certifies that the addresses of the defendants are as follows:

RAKS Fire Sprinkler, LLC
215 Mobile Street
Hattiesburg, MS 39401

Romero Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Alia Ali
10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Rashad Ali
302 First Hopewell Road
Sumrall, MS 39482

Donna A. Ali
302 First Hopewell Road
Sumrall, MS 39482

Alia Ali
4424 Shamrock Lane
Montgomery, AL 36106

Romero Ali
302 First Hopewell Road
Sumrall, MS 39482

Dated: 01/08/2021

Kimberly R. Moore, Senior Surety Consultant
On Point Risk Solutions, Inc., as Authorized
Aegis Security Insurance Company Representative

Sworn to and subscribed
before me this 8 day
of January, 2021.

Notary Public

01/08/2021

SASI REKHA SARAVANAN
Notary Public
Commonwealth of Virginia
Registration No. 7729768
My Commission Expires Feb 28, 2021

2

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><br>                            Plaintiff,<br>        v.<br><br>RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>                         Defendants. | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.: _2021 CV 318 NT_ |

**AFFIDAVIT OF ATTORNEY**

    I, MICHAEL F.J. ROMANO, an attorney at law licensed to practice in the Commonwealth of Pennsylvania and entrusted with the handling of the above-referenced matter on behalf of Aegis Security Insurance Company, plaintiff in the above-captioned matter, being

duly sworn according to law, hereby state that I am authorized to make this affidavit on behalf of

plaintiff and that the agreement at issue herein is not a retail sales agreement or contract.

_____
Michael F. J. Romano, Esquire

Sworn to and subscribed before me this
_11_ Day of _January_, 2021

_____
Notary Public

TAMMY L YOWELL
Notary Public, State of New Jersey
My Commission Expires
November 14, 2025

4

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110<br><br>             Plaintiff,<br><br>     v.<br><br>RAKS Fire Sprinkler, LLC<br>215 Mobile Street<br>Hattiesburg, MS 39401<br><br>ROMERO ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>ALIA ALI<br>10007 NE 12th Street, Apt. 108<br>Bellevue, WA 98004<br><br>RASHAD ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>DONNA A. ALI<br>302 First Hopewell Rd.<br>Sumrall, MS 39482<br><br>                  Defendants. | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO.: _2021 CV 318 NT_ |

**NOTICE UNDER RULE 2958.1 OF**
**JUDGMENT AND EXECUTION THEREON**

Notice of Defendant's Rights

TO:   RAKS Fire Sprinkler, LLC         Romero Ali
       215 Mobile Street             10007 NE 12th Street, Apt. 108
       Hattiesburg, MS 39401        Bellevue, WA 98004

       Romero Ali                    Alia Ali

2021 JAN 13 PM 12: 40 RECEIVED OFFICE OF PROTHONOTARY DAUPHIN COUNTY

1

302 First Hopewell Road
Sumrall, MS 39482

10007 NE 12th Street, Apt. 108
Bellevue, WA 98004

Alia Ali
4424 Shamrock Lane
Montgomery, AL 36106

Rashad Ali
302 First Hopewell Road
Sumrall, MS 39482

Donna A. Ali
302 First Hopewell Road
Sumrall, MS 39482

A judgment with a present balance in the amount of $912,441.73, plus continuing late charges, actual attorney's fees and costs has been entered against you and in favor of the plaintiff without any prior notice or hearing based on a confession of judgment contained in a written agreement or other paper allegedly signed by you. The Sheriff may take your money or other property to pay the judgment at any time after thirty (30) days after the date on which this notice is served on you.

You may have legal rights to defeat the judgment or to prevent your money or property from being taken. YOU MUST FILE A PETITION SEEKING RELIEF FROM THE JUDGMENT AND PRESENT IT TO A JUDGE WITHIN THIRTY (30) DAYS AFTER THE DATE ON WHICH THIS NOTICE IS SERVED ON YOU OR YOU MAY LOSE YOUR RIGHTS.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

2

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
Phone: (717) 232-7536

ROMANO, GARUBO & ARGENTIERI
Attorneys for Plaintiff

Dated:

Michael F.J. Romano, Esquire
Identification No. 52268
52 Newton Avenue, P.O. Box 456
Woodbury, NJ  08096
(856) 384-1515

3

Filed By: Michael F.J. Romano
**ROMANO, GARUBO & ARGENTIERI**
Identification No. 52268
**52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515**
Email: mromano@rgalegal.com

**Attorney for Plaintiff, Aegis Security Insurance Company**

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY<br>4507 North Front Street, Suite 200<br>Harrisburg, PA 17110 | COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY |
| Plaintiff, | CIVIL ACTION – LAW |
| v. | NO.: _2021 CV 318 NT_ |
| RAKS Fire Sprinkler, LLC<br>ROMERO ALI<br>ALIA ALI<br>RASHAD ALI<br>DONNA A. ALI | |
| Defendants. | |

### CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of* Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

ROMANO, GARUBO & ARGENTIERI

Dated:

Michael F.J. Romano, Esquire
PA Attorney ID 52268
52 Newton Avenue, PO Box 456
Woodbury, NJ 08096
PH: (856) 384-1515
FX: (856) 384-6371
mromano@rgalegal.com
Attorneys for Plaintiff

4