IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AEGIS SECURITY INSURANCE CO.,** | : | CIV NO. 1:21-CV-265 |
| **Plaintiff,** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **RAKS FIRE SPRINKLER, LLC, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. Factual Background and Procedural History

The defendants in this case have removed a confessed judgment entered against them by the plaintiff in state court to federal court and now move to stay, strike, or re-open this confession of judgment. (Docs. 3 and 22). In order to understand why this motion should be denied, it is necessary to briefly discuss the background of this contractual performance bond dispute.

On September 1, 2017, the plaintiff, Aegis, furnished a labor, material, and performance bond on behalf of Raks Fire Sprinkler, LLC, and its principals Romero Ali, Alia Ali, Rashad Ali, and Donna Ali. (Doc. 1-2, ¶9). This bond was issued in connection with work Raks was contractually obliged to perform for a company, Goudy Construction, Inc., as part of a construction project at Maxwell Air Force Base, and provided financial security to Goudy in the event of a contractual default by Raks. (Id.)

As between Aegis, Raks, and its principals, the mutual obligations of the parties were set forth in a written Agreement of Indemnity executed by the parties on September 16, 2016. (Id., ¶ 8 and Exhibit 1). In return for Aegis posting this performance bond on behalf of Raks, Raks and its principals agreed to:

> [E]xonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, …(i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of the Principal or any one or more of the Indemnitors to perform or comply with any of the covenants or conditions of this Agreement; (iii) in enforcing any of the covenants or conditions of this Agreement; (iv) in making an investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether the Surety, at its sole option, elects to employ its own counsel or permits or requires the Principal to make arrangements for the Surety's legal representation.

(Id., Exhibit 1, ¶ 3(a)). Thus, in this agreement, Raks and its principals agreed to broadly indemnify Aegis "from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature." (Id.)

The agreement also obliged Raks and its principals to post collateral upon demand by Aegis if a claim was made against this performance bond, stating that:

> The Principal and Indemnitors shall make payment to the Surety immediately upon demand by the Surety. The Surety may demand payment in an amount: (i) equal to the amount of any reserve set by the Surety, or (ii) equal to such amount as the Surety, in its sole judgment, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors are obligated to

indemnify the Surety under the terms of this Agreement.

(Id., Exhibit 1, ¶ 3(b)).

While Raks thus agreed to indemnify Aegis and post collateral upon demand in the event of a claim upon the performance bond, the agreement also clearly stated that Aegis "shall have the full and exclusive right, in its name or in the name of the Principal, . . . to prosecute, compromise, release or otherwise resolve any of the claims, causes of action or other rights . . ., upon which terms as the Surety, in its sole discretion, shall deem appropriate." (Id., Exhibit 1, ¶ 7).

Finally, this agreement of indemnification contained a commonplace provision in such contracts, a confession of judgment provision that allowed Aegis: "WITH RESPECT TO ANY SUMS DUE UNDER THIS AGREEMENT, . . . TO CONFESS OR ENTER JUDGMENT AGAINST [Raks or its principals] FOR ALL SUCH SUMS PAYABLE UNDER THIS AGREEMENT". (Id., Exhibit 1, ¶ 26). In addition to agreeing to the entry of a confessed judgment, Raks and its principals also contractually agreed that they would refrain from attempting to stay the enforcement of this confessed judgment. (Id.)

It is alleged that Raks subsequently defaulted upon its contractual obligations under its agreement with Goudy Construction to perform work on the Maxwell Air Force Base contract. This alleged default has led to litigation by Goudy against Raks and its principals in federal court in Alabama. Goudy Construction Inc. v. RAKS Fire

Sprinkler, Romero Ali, and Aegis Sec. Ins. Co., Cause No. 2:19-cv-01303 (N.D. Ala.). As it is entitled to do under the indemnity agreement, Aegis is defending this claim on behalf of Raks, and has incurred legal fees of $62,455.54, plus expert and investigative costs of $43,630.29 in the defense of this litigation. Aegis has also made payments under the performance bond totaling approximately $18,941.90 to date. (Id., ¶ 10). Furthermore, Goudy has submitted a performance bond claim to Aegis for an additional $787,414.00, the full amount of Raks' sub-contract with Goudy. (Id.)

Presented with these costs, expenses, payments, and demands under its performance bond, Aegis has exercised its contractual rights under its agreement with Raks and its principals by: (1) assuming responsibility for the defense of the Alabama lawsuit; and (2) making a demand upon Raks to post collateral to protect Aegis from loss in this case. Raks failed to fulfill its contractual duty to post collateral upon demand. Therefore, Aegis utilized the remedies provided to it by this agreement, and filed a confession of judgment action in the Court of Common Pleas of Dauphin County, which entered judgment in favor of Aegis in accordance with this agreement.

Raks and its principals then removed this case to federal court, and filed motions to stay, strike, or re-open this confession of judgment. (Docs. 3 and 22). These motions are now ripe for resolution. For the reasons set forth below, the motions will be denied.

## II. Discussion

### A.     Guiding Legal Standards

Pennsylvania law clearly permits parties to contracts to enter into and enforce agreements allowing for the confession of judgment. See Pa.R.C.P. Nos. 2950-2961. Thus, it is well settled that: "a judgment against a reasonably sophisticated corporate debtor who has signed an instrument containing a document permitting judgment by confession as part of a commercial transaction is enforceable in the same manner as any other judgment." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1272 (3d Cir. 1994). When a party believes that it is aggrieved by the entry of a previously agreed upon confession of judgment, that party may follow the course chosen here by Raks and its principals and may file a motion to strike or re-open the confessed judgment. Pa.R.C.P. No. 2959. However, such motions, which may set aside the settled contractual expectations of the parties, are judged by exacting legal standards.

Thus, while Pennsylvania law prescribes that motions to strike or re-open confessed judgments should be made in a single petition, such requests are governed by different legal benchmarks which require distinct but precise showings by the party seeking to avoid confession of judgment. Simply put, "[a] petition to strike a confessed judgment and a petition to open a confessed judgment are distinct

remedies; they are not interchangeable." Neducsin v. Caplan, 121 A.3d 498, 504 (Pa. Super. Ct. 2015).

These distinctions between motions to strike and motions to reopen confessed judgments guide us in this case. At the outset, in considering these distinct remedies:

> A motion to strike a judgment will be granted only if a fatal defect or irregularity appears on the face of the judgment, and the defect must be alleged in the motion to strike. See Manor Building Corp., 645 A.2d at 846. In determining whether there is a defect, the court must review together the confession of judgment clause complained of and the complaint itself. See id. at 252, 645 A.2d 843. The facts averred in the complaint are to be taken as true; if the debtor disputes their truth, the remedy is a motion to open the judgment. See id. Circumstances in which a judgment should be stricken include a creditor's lack of authority to confess judgment, see, e.g., Germantown Sav. Bank v. Talacki, 441 Pa.Super. 513, 657 A.2d 1285, 1291–92 (1995); entry of judgment by means not in accord with provisions of a warrant of attorney, see, e.g., Scott Factors, Inc. v. Hartley, 425 Pa. 290, 228 A.2d 887, 888–89 (1967); and warrants that are not in writing, or not signed directly by the person to be bound by them, see, e.g., Shidemantle v. Dyer, 421 Pa. 56, 218 A.2d 810, 811 (1966).

F.D.I.C. v. Deglau, 207 F.3d 153, 167 (3d Cir. 2000). In determining whether there is a fatal defect in the confession of judgment, we are enjoined that:

> A warrant of attorney to confess judgment must be strictly construed and that the warrant must be exercised in strict accordance with its terms: W. E. Heller & Co. v. Lombard Corp., 423 Pa. 333, 223 A.2d 716 (1966); Grady v. Schiffer, 384 Pa. 302, 121 A.2d 71 (1956). A warrant of attorney authorizing the entry of summary judgment must be clear and explicit, and if doubt exists as to the occurrence of a default, the doubt must be resolved against the party in whose favor the warrant is given.

Kline v. Marianne Germantown Corp., 263 A.2d 362, 364 (Pa. 1970). Therefore, we must carefully scrutinize the language of any contractual agreement to ensure that the confession of judgment comports with the requirements of the contract.

> In contrast:
>
> A motion to open is to be granted "[i]f evidence is produced which in a jury trial would require the issues to be submitted to the jury...." PA. R. CIV.P. 2959(e). Thus, the standard of sufficiency is that of a directed verdict. See Suburban Mechanical Contractors, Inc. v. Leo, 348 Pa. Super. 324, 502 A.2d 230, 232 (1985). The district court is to view all the evidence in the light most favorable to the petitioner and to accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment. See id. The Pennsylvania rules regarding challenges to confessed judgment require the petitioner to offer "clear, direct, precise and 'believable' evidence" of his meritorious defenses. Id. at 328, 502 A.2d 230.

F.D.I.C. v. Deglau, 207 F.3d at 168.

In resolving a motion to strike or re-open a confessed judgment, we possess broad discretion and may reach the merits of such requests based upon the parties submissions without the necessity of hearings, arguments or other proceedings. Id. at 165.

It is through this analytical lens that we view the instant motions to stay, strike, or re-open this confession of judgment. (Docs. 3 and 22).

> **B.    The Motions to Stay, Strike, or Re-open This Confession of Judgment Will Be Denied.**

Judged by these legal guideposts, we find that the motions to stay, strike, or re-

open this confession of judgment, (Docs. 3 and 22), should be denied. Turning first to Raks' motion to strike his confession of judgment, we find that there is no fatal defect or irregularity on the face of the judgment that would justify this relief. Quite the contrary, confession of judgment was explicitly authorized by the indemnity agreement between Aegis, Raks, and its principals. Moreover, that written agreement appears to bear the signature of the defendant, all of whom consented to confession of judgment in the event of default.

    Notwithstanding the facial validity of this confession of judgment under the agreement between Raks and Aegis, for its part, Raks suggests that the confession of judgment is improper because it is premature and various items claimed in the confessed judgment are not encompassed by the parties' agreement. Even when we strictly construe this indemnity agreement, as we are required to do, we disagree with Raks' interpretation of the agreement and Pennsylvania law governing confessions of judgment. First, contrary to Raks' suggestion, we find nothing in Pennsylvania law which categorically forbids Aegis from seeking to confess a judgment from Raks with respect to Goudy's contractual claims that are being contested in federal court in Alabama. Aegis' ability to confess judgment at this stage of the proceedings is not contingent upon the progress of this collateral litigation in Alabama. Rather, it is a function of the covenants entered into by Aegis and Raks in their indemnity agreement.

On this score, Raks' argument conflates common law and contractual indemnity provisions, and ignores the plain language of this indemnity agreement. This is a crucial error since:

> With regard to indemnity and surety contracts, at common law, equity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which its principal is liable. Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983) (applying Pennsylvania law) (citing Com'l Ins. Co. of Newark v. Pacific–Peru Constr., 558 F.2d 948, 953 (9th Cir. 1977)). However, implied indemnity principles are improper when an express indemnification contract exists. When there is such an express contract, a surety is entitled to stand upon the letter of the contract. U.S. Fid. Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999) (citations omitted).

Devs. Sur. & Indem. Co. v. Chrisellie Corp., 497 F. Supp. 3d 9, 18 (W.D. Pa. 2020), reconsideration denied, No. 2:17-CV-01360-MJH, 2020 WL 7222768 (W.D. Pa. Dec. 8, 2020).

With our judgment governed by the terms of the parties' agreement, we note that this contract stated in clear and precise terms that Raks and its principals agreed to: "exonerate, hold harmless, indemnify and keep indemnified the Surety from and *against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature*." (Doc. 1-2, Exhibit 1, ¶ 3(a)). The contract's sweeping language, which embraced "any and all claims, demands, and liability for losses, costs, damages, and expenses of whatsoever kind or nature," clearly embraced both actual payments and prospective liabilities. Indeed, reading the agreement in the

9

fashion proposed by Raks, which would limit indemnification only to those claims that had been fully adjudicated, would render the contractual language extending this indemnification duty to "any and all claims, demands. . . of whatsoever kind or nature" a nullity. We may not re-write the agreement of the parties. Instead, our duty is to interpret the agreement, as written. Construing the clear text of the agreement, we find that this contractual language plainly covers both the payments made to date by Aegis on this bond as well as the $787,000 claim and demand submitted by Goudy Construction against the performance bond. Further, the agreement expressly extended this indemnification responsibility to both actual damages as well as "costs, . . ., and expenses of whatsoever kind or nature." (Id.) Given this broad description of Raks' duty to indemnify, the litigation expenses and attorney's fees incurred by Aegis in defending this underlying lawsuit are costs and expenses of whatsoever kind or nature and appear to fall within the ambit of this indemnity provision.

Finding that the various elements of loss claimed by Aegis fall within the terms of this agreement, we also conclude that the agreement authorized Aegis to require Raks to post collateral to cover these expenses. When Raks failed to fulfill its contractual obligation to post this collateral, the agreement allowed Aegis to confess judgment, which is the course that Aegis followed in this case. Therefore, we conclude that there is no fatal, facial defect in this judgment which would justify striking the confessed judgment.

Likewise, when we assess Raks' motion to re-open this judgment against the prevailing legal standards, which "require the petitioner to offer 'clear, direct, precise and "believable" evidence' of his meritorious defenses" justifying re-opening this judgment, F.D.I.C. v. Deglau, 207 F.3d at 168, this motion also fails. On this score, in support of its motion to re-open, Raks renews the arguments it has made in connection with its motion to strike, which we have considered but rejected. In addition, Raks also asserts that: "There is a clear factual dispute regarding the claims listed in the Confessed Judgment, as Aegis is currently litigating this issue in another court proceeding and disputes owing the amount claimed in the Confessed Judgment." (Doc. 10, at 6). Thus, citing the fact that Aegis is endeavoring to defend the claim that Goudy Construction may have against it, Raks insists that this defense creates a factual dispute regarding its liability under the indemnity agreement.

We disagree. In our view, the fact that Aegis may be attempting to mount a defense on behalf of Raks to Goudy Construction's claims in the federal lawsuit in Alabama is not a circumstance that justifies re-opening this confessed judgment. Raks' liability to Aegis is a function of the contract between these parties. As we have previously discussed, the contract obliged Raks to indemnify Aegis against both sums paid and demands made under the performance bond that it issued for the benefit of Raks. If Raks failed to indemnify Aegis, under the parties' agreement, Aegis could

11

enter a confessed judgment against Raks. Nothing about Aegis' actions defending this lawsuit brought against Raks in any way altered these clear contractual obligations.

Quite the contrary, this agreement to indemnify expressly allowed Aegis to assume the responsibility for the defense of this lawsuit while also insisting that Raks indemnify it against actual and potential losses. Moreover, there is nothing inherently inconsistent about a surety undertaking these two courses simultaneously. Indeed, drafting the indemnity agreement in this fashion makes sound business sense, since Aegis's ability to mitigate its losses on the bond it issued for the benefit of Raks should not be held hostage to the degree of diligence exercised by Raks in defending this lawsuit. In short, it was commercially reasonable for Aegis to undertake the defense of this case, given its substantial potential liability on this bond. Moreover, the contract signed by Raks and its principals specifically permitted Aegis to take this course even as it demanded indemnification from the defendants. Finding no irreconcilable factual conflict between these contract provisions that allowed Aegis to defend Raks' conduct in the Alabama litigation while insisting upon indemnification against the actual and potential losses in this lawsuit, Raks' motion to re-open this confessed judgment on this ground will be denied.

At bottom, it seems that Raks' motions are motivated by a concern that the indemnity agreement allows Aegis to seek indemnity and confess a judgment based upon both actual payments made and expenses incurred by Aegis, which exceed

$100,000, and the $787,000 outstanding demand tendered by Goudy Construction. While in hindsight for Raks, this may seem a harsh outcome, we have found that it is the outcome Raks agreed to when it signed the indemnity agreement in September of 2016. Further, we note that the severity of this outcome can be mitigated by other events, even if Raks is unable to strike or re-open this confessed judgment at this time. Specifically, if Raks and Aegis are able to prevail in whole or in part in the litigation brought by Goudy Construction in federal court in Alabama, then this prospective $787,000 liability may be either significantly reduced or eliminated entirely. Should these events transpire, then Raks would be free to move to modify this confessed judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, citing these changed circumstances, and we would favorably consider a motion to modify the confessed judgment to mold that judgment to reflect the actual final amount owed by Raks and its principals to indemnify Aegis. This, in our view, is the avenue of relief available to Raks and its principals. However, given the clear contractual rights and duties set forth in the agreement between Raks, its principals, and Aegis, the defendants may not strike or re-open the confessed judgment which Aegis was contractually authorized to obtain.[1]

---

[1] These findings also dictate the outcome of the defendants' motion to stay execution of this judgment. (Doc. 22). Since we find that the judgment has been properly entered in this matter, is not subject to being re-opened or stricken, and given that the contract between these parties expressly provided that Raks and its principals would refrain from attempting to stay the enforcement of this confessed judgment, (Doc. 1-2,

13

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: July 29, 2021.

Exhibit 1 ¶ 26), this motion to stay will also be denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AEGIS SECURITY INSURANCE CO.,** | : | **CIV NO. 1:21-CV-265** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **RAKS FIRE SPRINKLER, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 29th day of July 2021, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the defendants' motions to stay, strike, or re-open this confession of judgment. (Docs. 3 and 22) are DENIED and the clerk is directed to CLOSE this file.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

15